## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

IN RE:      MATTHEW P. GUBALA          Case No.: 17-30874-EDK
            SHAENA A. GUBALA          Chapter 7
            *Debtors*

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

TO THE HONORABLE ELIZABETH D. KATZ:

U.S. Bank, National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust, together with its successors and assigns ("Movant"), your moving party in the within Motion, respectfully represents as follows:

1.      Movant is an entity with a mailing address of c/o Rushmore Loan Management Services, P.O. Box 52708, Irvine, California 92619.

2.      The debtors, Matthew P. Gubala and Shaena A. Gubala (the "Debtors"), are individuals who have a mailing address of 6 Cherry Hill, Holyoke, Massachusetts 01040.

3.      The Debtors are the obligors pursuant to a promissory note (the "Note") dated October 10, 2006, in the original principal amount of $166,500.00.   A copy of the Note is annexed as Exhibit "A."

4.      To secure the Note, the Debtors executed in favor of, and delivered a mortgage to Mortgage Electronic Registration Systems, Inc. (MERS) (the "Mortgage," together with the Note and any other loan documents executed in connection therewith, the "Loan Documents") dated October 10, 2006, securing the Note and encumbering the property located at 6 Cherry Hill, Holyoke, Massachusetts 01040 (the "Property").   A copy of the Mortgage is annexed as Exhibit "B."

5.      There is no other collateral to secure the Note.

6.      Movant is the current holder of the Loan Documents by virtue of the Assignment of Mortgage annexed as Exhibit "C."

7.      On October 18, 2017, the Debtors filed a petition under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts.   On November 15, 2017, the case was converted to a Chapter 7 bankruptcy case.

8.      As of January 18, 2018, the total amount due and owing pursuant to the Loan Documents was $208,439.80 in principal, accrued interest, late charges, miscellaneous fees, and attorneys' fee and costs.

9.      As of January 18, 2018, there is a contractual arrearage in the amount of $48,035.07 due and owing under the Loan Documents.   This amount is exclusive of attorneys' fees, costs, and expenses in connection with this Motion.

10.      The regular monthly payment due at this time is approximately $1,176.94.

11.      According to information obtained from the municipality in which the property is located, there are no outstanding taxes due.

12.      The total amount of encumbrances on the Property is approximately $208,439.80.

13.      There exists a Declaration of Homestead recorded on the Property at the Hampden County Clerk's office, Book 21905, Page 519.

14.      The Debtors' Schedules list a fair market value for the Property of $192,778.00.

15.      According to the Debtors' Statement of Intention, they are intending to surrender the Property.

16.      On December 18, 2017, the Trustee filed an application seeking to employ

BK Global Real Estate Services.  Said application was granted by Order of this Court entered January 10, 2018.  However, Movant has not consented to a short sale or carve out at this time, and no short sale has been proposed to Movant.

17.     For purposes of this Motion only, Movant asserts that the liquidation value of the Property is $179,782.25, calculated at the Debtors' value less a reasonable realtor's fee of 6%; deed stamps; and costs incurred in a real estate closing estimated to be $550.00.

18.     Movant seeks relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) for cause on the basis that the Debtors are in default of the payment obligations resulting in an arrearage owing under the Loan Documents.

19.     Movant seeks relief from the automatic stay pursuant to 11 U.S.C. §362(d)(2) as there is no equity in the Property and it is not necessary for an effective reorganization.

20.     Counsel for Movant hereby certifies compliance with LBR 9013-1(b).

WHEREFORE, Movant requests that the Court:

(1) Grant relief from the section 362 automatic stay and the stay imposed by Bankruptcy Rule of Procedure 4001(a)(3) for the purpose of exercising its various non-bankruptcy rights and remedies including, without limitation:

a.  taking possession of the Property, obtaining a deed-in-lieu of foreclosure and/or foreclosing the Mortgage; and

b.  taking such action as may be necessary to evict the Debtors or any occupant from the Property.

(2)  Order such other and further relief as may be just and proper.

Dated: February 8, 2018

                  Movant
                  By Its Attorney,

                  /s/ Stefanie D. Howell
                  Stefanie D. Howell, Esq.
                  BBO# 664739
                  Shechtman Halperin Savage, LLP
                  1080 Main Street
                  Pawtucket, Rhode Island 02860
                  (401) 272-1400 phone
                  (401) 272-1403 fax
                  showell@shslawfirm.com

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 13-16-1(a)**

The pre-filing conference <u>was not</u> held in this matter. On January 29, 2018, I initiated the 13-16-1 conference with the Debtor's counsel by email. There is no resolution at this time.

                  /s/ Tamara A. Dallaire

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that the Motion for Relief from Automatic Stay and the Proposed Order were served upon the following parties by causing true and correct copies of the same to be sent via electronic notice or via first class mail postage pre-paid, as indicated, on February 8, 2018:

<u>Via Electronic Notice</u>:

Richard King
Office of the U.S. Trustee
446 Main Street
14th Floor
Worcester, MA 01608

David W. Ostrander, Esq.
P.O. Box 1237; 36 Service Center Road
Northampton, MA 01061
david@ostranderlaw.com

Jonathan R. Goldsmith, Esq.
1350 Main Street, Suite 1505
Springfield, MA 01103
trusteedocs1@gklawfirm.com


Via First Class Mail:

Matthew P. Gubala
6 Cherry Hill
Holyoke, MA 01040

Shaena A. Gubala
6 Cherry Hill
Holyoke, MA 01040

City of Holyoke
536 Dwight Street
Holyoke, MA 01040

U.S. Bank, National Association
c/o Rushmore Loan Management Services
P.O. Box 52708
Irvine, CA 92619


/s/ Stefanie D. Howell

Loan No: ▮▮▮▮▮▮
Borrower:  MATTHEW P GUBALA

## EXHIBIT A

### ADJUSTABLE RATE NOTE

MIN: ▮▮▮▮▮▮▮▮▮

**(LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

October 10, 2006　　　　　　HOLYOKE　　　　　MASSACHUSETTS
　　　　　　　　　　　　　　　　　[City]　　　　　　　　　　[State]
　　　　　　　　　　　　　　6 CHERRY HILL
　　　　　　　　　HOLYOKE, MASSACHUSETTS　01040
　　　　　　　　　　　　　　　[Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 166,500.00 (this amount is called "Principal"), plus interest, to the order of Lender.  Lender is **AEGIS LENDING CORPORATION**.  I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of **9.100 %**.  The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.  PAYMENTS**

　(A)  **Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on December 1, 2006.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on November 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 422039, HOUSTON, TX  77242-2039, or at a different place if required by the Note Holder.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna

Form 3520  1/01　　　(Page 1 of 5 Pages)

INITIALS: _MPG_ _SMG_

Loan No: ███████████

(B)  **Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ 1,351.69.  This amount may change.
(C)  **Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A)  **Change Dates**
The interest rate I will pay may change on the first day of **November, 2009**, and on that day every 6th month thereafter.  Each date on which my interest rate could change is called a "Change Date."
(B)  **The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.
(C)  **Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **SEVEN** percentage points ( 7.000 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.
(D)  **Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 12.1000 % or less than 9.1000 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE  percentage point (1.00 %) from the rate of interest I have been paying for the preceding 6 months.  My interest rate will never be greater than 15.1000 % or less than 9.1000 %.
(E)  **Effective Date of Changes**
My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
(F)  **Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                                         Form 3520  1/01        (Page 2 of 5 Pages)

INITIALS: *[signature]*  *[signature]*

, Loan No: ███████████

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge.  If this Note is not in default, the Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be 3.00 % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Acceleration**

If I am in default, the Note Holder may without notice or demand, unless otherwise required by applicable law, require me to pay immediately the full amount of Principal that has not been paid and all interest that I owe on that amount.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                           Form 3520  1/01      (Page 3 of 5 Pages)

INITIALS: _MPA_  _SRG_

Loan No:

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of notice of acceleration, Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-**Fannie Mae** UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                                                   Form 3520 1/01       *(Page 4 of 5 Pages)*

INITIALS:

Loan No:

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MATTHEW P GUBALA —Borrower

_____ (Seal)
SHAENA A GUBALA —Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC

BY: _____
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

PAY TO THE ORDER OF
**COUNTRYWIDE HOME LOANS, INC.**
WITHOUT RECOURSE
AEGIS MORTGAGE CORPORATION

TRYMEKA McCOY
ASSISTANT SECRETARY

**MULTISTATE ADJUSTABLE RATE NOTE**-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-**Fannie Mae** UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna

Form 3520  1/01      *(Page 5 of 5 Pages)*

Bk 16258 Pg421   #92108
10-16-2006 @ 02:06p

## EXHIBIT B

Loan No:
Borrower:  MATTHEW P GUBALA

Return to:  AEGIS LENDING CORPORATION
ATTENTION: LOAN SHIPPING,REG 30
P.O. BOX 84308
BATON ROUGE, LA  70884

[Space Above This Line For Recording Data]

## MORTGAGE                MIN:

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated October 10, 2006, together with all Riders to this document.

(B) **"Borrower"** is MATTHEW P GUBALA  AND  SHAENA A GUBALA      .  Borrower is the mortgagor under this Security Instrument.

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the mortgagee under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) **"Lender"** is AEGIS LENDING CORPORATION.  Lender is a Corporation organized and existing under the laws of the State of DELAWARE.  Lender's address is 10049 NORTH REIGER ROAD, BATON ROUGE, LA 70809.

(E) **"Note"** means the promissory note signed by Borrower and dated October 10, 2006.  The Note states that Borrower owes Lender ONE HUNDRED SIXTY-SIX THOUSAND FIVE HUNDRED and NO/100-----**Dollars (U.S. $ 166,500.00)** plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **November 1, 2036.**

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider      ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider
☐ Other(s) [specify]

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**MASSACHUSETTS** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna          Form 3022    1/01          (Page 1 of 11 Pages)

2/25/2015

Bk 16258 Pg 422 #92108

Loan No: ███████

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of HAMPDEN:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of 6 CHERRY HILL,
[Street]
HOLYOKE, MASSACHUSETTS                    01040        ("Property Address"):
[City]                                    [Zip Code]

**MASSACHUSETTS** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                Form 3022    1/01    (Page 2 of 11 Pages)

Bk 16258  Pg 423 #92108

Loan No: ████████

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
    2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.
    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**MASSACHUSETTS** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna        Form 3022    1/01    (Page 3 of 11 Pages)

Bk 16258   Pg 424  #92108

Loan No: ███████

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**MASSACHUSETTS** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna          Form 3022   1/01   (Page 4 of 11 Pages)

Bk 16258  Pg 425 #92108

Loan No: ████████

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**MASSACHUSETTS** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna          Form 3022    1/01    (Page 5 of 11 Pages)



Bk 16258   Pg 426 #92108

Loan No: ▮▮▮▮▮                                        ▮▮▮▮▮

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

**MASSACHUSETTS** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna          Form 3022   1/01   (Page 6 of 11 Pages)



2/25/2015

Bk 16258    Pg 427    #92108

Loan No: ████████

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

**MASSACHUSETTS** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna          Form 3022    1/01    (Page 7 of 11 Pages)

2/25/2015

Bk 16258  Pg 428  #92108

Loan No: ███████                                              ████████

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**MASSACHUSETTS** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
Modified by Middleberg, Riddle & Gianna                    Form 3022    1/01    (Page 8 of 11 Pages)

Bk 16258  Pg 429 #92108

Loan No:

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**MASSACHUSETTS** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                Form 3022    1/01    (Page 9 of 11 Pages)

Bk 16258  Pg 430 #92108

Loan No: ████████

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Following Borrower's breach of any covenant or agreement in this Security Instrument, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**MASSACHUSETTS** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna              Form 3022    1/01    (Page 10 of 11 Pages)

Bk 16258  Pg 431 #92108

Loan No: ████████

████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MATTHEW P GUBALA —Borrower

_____ (Seal)
SHAENA A GUBALA —Borrower

_____ [Space Below This Line For Acknowledgment] _____

STATE of ~~RHODE ISLAND~~ Massachusetts
~~LAND EVIDENCE~~ of Hampden    §
County    §
On this    10th    day of    October    , 20 06 , before me, the undersigned
notary public, personally appeared
MATTHEW P GUBALA AND SHAENA A GUBALA
proved to me, through satisfactory evidence of identification, which were
MASS DRIVERS LICENSES , to be the persons whose name is signed on the preceding or
attached document, and acknowledged to me that they signed it voluntarily for its stated purpose.

(Seal)

_____
Beth A. Lemelin    Notary Public

Beth A. Lemelin
(Printed Name)

My commission expires:  2 5 2010

BETH A. LEMELIN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
February 5, 2010

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna    Form 3022    1/01    (Page 11 of 11 Pages)

Bk 16258  Pg 432 #92108

COMMITMENT FOR TITLE INSURANCE

EXHIBIT A

Commitment Number: ████████        File Number: ████████

The land and buildings thereon situated in Springfield, Hampden County, Massachusetts and being known and designated as Lot Number Four (4) on a Plan of Lots recorded in Hampden County Registry of Deeds, Book of Plans R, Page 88, said lot being more particularly bounded and described as follows:

Beginning at a stake on the easterly side of Cherry Hill, one hundred fourteen (114) feet northerly from a stone bound; thence running fifty-seven (57) feet along Cherry Hill to a stake; thence running NORTHEASTERLY one hundred and 05/100 (100.05) feet to a stake; thence running SOUTHWESTERLY, one hundred thirty (130) feet to a stake; and thence running SOUTHWESTERLY one hundred forty-two and 70/100 (142.70) feet to the point of beginning.

*Being the same Premises conveyed in Deed 11975-170*

Property Address: 6 Cherry Hill, Holyoke MA (AP 125 Lot 109)

This Commitment is invalid unless the Cover Page, Schedule A, Exhibit A and Schedules B – Sections 1 and 2 are attached.

Bk 16258  Pg 433 #92108

Loan No: ████████
Borrower: MATTHEW P GUBALA                                    ████████████

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 10th day of October, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AEGIS LENDING CORPORATION ("Lender") of the same date and covering the property described in the Security Instrument and located at:

6 CHERRY HILL
HOLYOKE, MASSACHUSETTS 01040
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT.  THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 9.100 %.  The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**
The interest rate I will pay may change on the first day of November, 2009, and on that day every 6th month thereafter.  Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN percentage points ( 7.000 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3138  1/01      (Page 1 of 3 Pages)



Bk 16258   Pg 434 #92108

Loan No: ████████                                    ████████

The Note Holder will then determine the amount of the monthly payment that would be
sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the
Maturity Date at my new interest rate in substantially equal payments. The result of this calculation
will be the new amount of my monthly payment.

**(D)Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than
12.1000 % or less than 9.1000 %. Thereafter, my interest rate will never be increased or decreased on
any single Change Date by more than ONE percentage point (1.00 %) from the rate of interest I have
been paying for the preceding 6 months. My interest rate will never be greater than 15.1000 % or less
than 9.1000 %.

**(E)Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my
new monthly payment beginning on the first monthly payment date after the Change Date until the
amount of my monthly payment changes again.

**(F)Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the
amount of my monthly payment before the effective date of any change. The notice will include
information required by law to be given to me and also the title and telephone number of a person
who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18,
"Interest in the Property" means any legal or beneficial interest in the Property, including, but not
limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales
contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date
to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if
Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without
Lender's prior written consent, Lender may require immediate payment in full of all sums secured by
this Security Instrument. However, this option shall not be exercised by Lender if such exercise is
prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be
submitted to Lender information required by Lender to evaluate the intended transferee as if a new
loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security
will not be impaired by the loan assumption and that the risk of a breach of any covenant or
agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition
to Lender's consent to the loan assumption. Lender also may require the transferee to sign an
assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the
promises and agreements made in the Note and in this Security Instrument. Borrower will continue
to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3138  1/01      (Page 2 of 3 Pages)

Bk  16258   Pg  435  #92108



Loan No:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in
this Adjustable Rate Rider.

_____ (Seal)
MATTHEW P GUBALA —Borrower,

_____ (Seal)
SHAENA A GUBALA —Borrower

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)—
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna          Form 3138  1/01    (Page 3 of 3 Pages)

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS

2/25/2015

Bk 20304 Pg54 #25686
06-05-2014 @ 01:34p

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

**EXHIBIT C**

## Assignment of Mortgage

Dated: **May 30, 2014**

For value received **Bank of America, N.A. successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, by Indecomm Global Services its attorney in fact, 7105 Corporate Drive, Plano, TX 75024**, the undersigned hereby grants, assigns and transfers to **Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 3, In c/o Altisource Asset Management Corporation, 620 Market Street, Knoxville, TN 37902**, all beneficial interest under a certain Mortgage dated **October 10, 2006** executed by **MATTHEW P GUBALA AND SHAENA A GUBALA** and recorded in Book **16258** on Page(s) **421** as Document Number **92100** on October 16, 2006 of the official records of the Register of Deeds of Hampden County, Massachusetts

PROPERTY ADDRESS: **6 CHERRY HILL, HOLYOKE, MA 01040**

Bank of America, N.A. successor by merger to BAC
Home Loans Servicing, LP FKA Countrywide Home
Loans Servicing, LP, by Indecomm Global Services
its attorney in fact

By: _____

**Bao Cindy Fang,**
**Vice President**

STATE OF **Minnesota**               )

COUNTY **Ramsey**                    ) SS

On **May 30, 2014** before me, **Pang Mee Yang** , **Notary Public** in and for said State personally appeared **Bao Cindy Fang** , **Vice President** of Bank of America, N.A. successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, by Indecomm Global Services its attorney in fact, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

Prepared By:
LeeAnn Samuelson
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

Pang Mee Yang, Notary Public
My Commission expires: January 31, 2017

**PANG MEE YANG**
Notary Public-Minnesota
My Commission Expires Jan 31, 2017

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS

Bk 20426 Pg571 #45676
09-16-2014 @ 09:44a

When Recorded Return To: *BM*
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

## CORRECTIVE*Assignment of Mortgage

Dated: **August 18, 2014**

For value received **Bank of America, N.A. successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, by Indecomm Holdings, Inc. d/b/a Indecomm Global Services its attorney in fact, 7105 Corporate Drive, Plano, TX 75024,** the undersigned hereby grants, assigns and transfers to **Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 4, In c/o Altisource Asset Management Corporation, 620 Market Street, Knoxville, TN 37902,** all beneficial interest under a certain Mortgage dated **October 10, 2006** executed by **MATTHEW P GUBALA AND SHAENA A GUBALA** and recorded in Book **16258** on Page(s) **421** as Document Number **92100 on October 16, 2006** of the official records of the **Register of Deeds of Hampden County, Massachusetts**

PROPERTY ADDRESS: **6 CHERRY HILL, HOLYOKE, MA 01040**
*to correct the Assignee name on Assignment dated May 30, 2014 and recorded on June 05, 2014 under Document Number 25686 Book 20304 Page 54.

*POA recorded 6/5/2014 as Doc# 25685, BK 20304, Pg 50*

Bank of America, N.A. successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, by Indecomm Holdings, Inc. d/b/a Indecomm Global Services its attorney in fact

By: _____
**Nhia Indiati Moua,
Assistant Secretary**

STATE OF **Minnesota**  )
COUNTY **Ramsey**  ) SS

On **August 18, 2014** before me, **Bao Cindy Fang** , Notary Public in and for said State personally appeared **Nhia Indiati Moua** , Assistant Secretary of Indecomm Holdings, Inc. d/b/a Indecomm Global Services its attorney in fact for Bank of America, N.A. successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

Prepared By:
LeeAnn Samuelson
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

_____
**Bao Cindy Fang, Notary Public**
My Commission expires: **January 31, 2017**

BAO CINDY FANG
Notary Public-Minnesota
My Commission Expires Jan 31, 2017

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS

Bk 18925 Pg70  $50957

09-23-2011 a 11:13a

This space for Recorder's use

| | Recording Requested By:<br>**Bank of America**<br>Prepared By:<br>**Aida Duenas**<br>**888-603-9011**<br>**450 E. Boundary St.**<br>**Chapin, SC 29036** | When recorded mail to:<br>**CoreLogic**<br>**450 E. Boundary St.**<br>**Attn: Release Dept.**<br>**Chapin, SC 29036** |

Property Address:
**6 Cherry Hl**
**Holyoke, MA 01040-1704**
Property Location:
**Township of SPRINGFLELD**
9/8/2011

MIN #: _____    MERS Phone #:  888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME  LOANS SERVICING, LP** whose address is **400 NATIONAL WAY, SIMI VALLEY, CA 93065** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:  **AEGIS LENDING CORPORATION**
Original Borrower(s):  **MATTHEW P GUBALA AND SHAENA A GUBALA**
Date of Mortgage:  **10/10/2006**
Original Loan Amount:  **$166,500.00**

Recorded in Hampden/Torrens,M A on: **10/16/2006, book 16258, page 421 and instrument number 92108**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on

_09/09/2011_

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _____
**Dominique Johnson, As sistant Secretary**

State of **California**
County of **Ventura**

On _09/09/11_ before me, _MARCELLUS ELLIS_ , Notary Public, personally appeared **Dominique Johnson**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/thior signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _MARCELLUS ELLIS_      (Seal)
My Commission Expires: _10/31/13_

MARCELLUS ELLIS
Commission # 1869981
Notary Public - California
Los Angeles County
My Comm. Expires Oct 31, 2013

**DONALD E. ASHE, REGISTER**
HAMPDEN COUNTY REGISTRY OF DEEDS

2/25/2015

PREPARED BY: RLMS
WHEN RECORDED, RETURN TO:
RUSHMORE LOAN MANAGEMENT SERVICES LLC
15480 LAGUNA CANYON ROAD, SUITE 100
IRVINE CA 92618

RECORDING REQUESTED BY:
RUSHMORE LOAN MANAGEMENT SERVICES LLC

### ASSIGNMENT OF MORTGAGE

LOAN #:
FOR VALUE RECEIVED:
ASSIGNOR:                          CHRISTIANA TRUST, A DIVISION OF WILMINGTON
                                   SAVINGS FUND SOCIETY, FSB, NOT IN ITS
                                   INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP
                                   TRUST 4

ASSIGNOR ADDRESS:                  500 DELAWARE AVENUE, 11TH FLOOR
                                   WILMINGTON, DE 19801

HEREBY GRANTS, ASSIGNS AND TRANSFERS TO:

ASSIGNEE:                          U.S. BANK, NATIONAL ASSOCIATION AS LEGAL
                                   TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE
                                   TRUST

ASSIGNEE ADDRESS:                  60 LIVINGSTON AVENUE, EP-MN-WS3D
                                   ST. PAUL, MN 55107

ALL OF ITS RIGHT, TITLE AND INTEREST AS MORTGAGEE UNDER THAT CERTAIN MORTGAGE:
DATED:                             10/10/2006
ORIGINAL LOAN AMOUNT:              $166,500.00
MORTGAGOR/BORROWER:                MATTHEW P GUBALA AND SHAENA A GUBALA
ORIGINAL MORTGAGEE:                MORTGAGE ELECTRONIC REGISTRATION
                                   SYSTEMS, INC. ("MERS") AS NOMINEE FOR AEGIS
                                   LENDING CORPORATION, ITS SUCCESSORS AND
                                   ASSIGNS

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF HAMPDEN COUNTY, MA
RECORDED: 10/16/2006 BOOK/VOLUME/LIBER: 16258 PAGE: 421 DOCUMENT: 92108

POWER OF ATTORNEY RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF
BARNSTABLE COUNTY, MA RECORDED: 05/16/2017 BOOK/VOLUME/LIBER: 30489 PAGE: 142
DOCUMENT: 23681

PROPERTY SUBJECT TO LIEN:          6 CHERRY HILL, HOLYOKE, MA 01040

TOGETHER WITH THE PROMISSORY NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO,
THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID MORTGAGE.

DATED: ____JUL 1 2 2017____         CHRISTIANA TRUST, A DIVISION OF WILMINGTON
                                    SAVINGS FUND SOCIETY, FSB, NOT IN ITS
                                    INDIVIDUAL CAPACITY BUT AS TRUSTEE OF ARLP
                                    TRUST 4 BY RUSHMORE LOAN MANAGEMENT
                                    SERVICES LLC, ITS APPOINTED ATTORNEY IN
                                    FACT

                                    BY:
                                    NAME:        Jeannette Kabayan
                                    TITLE:       Vice President

MA 01/13

## ALL-PURPOSE ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

State of <u>California</u>
County of <u>ORANGE</u>

On ___JUL 1 2 2017___, before me, _____Tamara Sulea_____, Notary Public, personally appeared, _____Jeannette Kabayan_____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

TAMARA SULEA
Notary Public - California
Orange County
Commission # 2180035
My Comm. Expires Feb 12, 2021

_____
Signature of Notary                              (seal)

MA 01/13

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS
E-RECORDED

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Matthew P. Gubala** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | **Shaena A. Gubala** |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF MASSACHUSETTS |
| Case number | **17-30874** |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

### Part 1:    List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|

| 2.1 | **Holyoke Credit Union** | | $17,786.00 | $13,388.00 | $4,398.00 |
|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:

**2013 Chevrolet Traverse 42935 miles**

490 Westfield Road
Holyoke, MA 01040

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    Auto Loan

Date debt was incurred _____    Last 4 digits of account number _____

| 2.2 | **Rushmore Loan Management Services** | | $205,000.00 | $192,778.00 | $12,222.00 |
|---|---|---|---|---|---|

Creditor's Name

Describe the property that secures the claim:

**6 Cherry Hill Holyoke, MA 01040 Hampden County**

P.O. Box 52708
Irvine, CA 92619

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☑ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    Mortgage

Date debt was incurred **10/16/2006**    Last 4 digits of account number **8872**

Official Form 106D          Schedule D: Creditors Who Have Claims Secured by Property          page 1 of 2



| | | |
|---|---|---|
| Debtor 1 | **Matthew P. Gubala** | |
| | First Name    Middle Name    Last Name | Case number (if know)    **17-30874** |
| Debtor 2 | **Shaena A. Gubala** | |
| | First Name    Middle Name    Last Name | |

| | | | |
|---|---|---|---|
| 2.3 | **U.S. Bank, N.A.** | Describe the property that secures the claim: | $0.00    $192,778.00    $0.00 |
| | Creditor's Name | | |
| | **c/o Korde & Associates, P.C.** | | |
| | **900 Chelmsford Street, Suite 3102 Lowell, MA 01851** | | |

**U.S. Bank, N.A.**

Creditor's Name

**c/o Korde & Associates, P.C.**

**900 Chelmsford Street, Suite 3102**
**Lowell, MA 01851**

Number, Street, City, State & Zip Code

Describe the property that secures the claim:

> **See duplicate claim of Rushmore Loan Management Services**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent

☐ Unliquidated

☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)

☐ Judgment lien from a lawsuit

☐ Other (including a right to offset) _____

Date debt was incurred _____    Last 4 digits of account number _____

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $222,786.00 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $222,786.00 |

**Part 2:    List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 2 of 2

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

IN RE:

      MATTHEW P. GUBALA             Case No.: 17-30874-EDK
      SHAENA A. GUBALA              Chapter 7
      *Debtors*

## <u>ORDER</u>

This matter having come before the Court on the Motion for Relief from Automatic Stay (the "Motion") filed by U.S. Bank, National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust together with its successors and assigns ("Movant"), and good cause having been shown, and proper notice having been given, it is hereby

ORDERED, ADJUDGED AND DECREED

(1)      that the Motion is granted; and

(2)      that Movant is granted relief from the section 362 automatic stay and the stay imposed by Bankruptcy Rule of Procedure 4001(a)(3) for the purpose of exercising its rights under its agreements with the Debtors and under applicable law, including, without limitation, foreclosing the Mortgage, as defined in the Motion, encumbering the property located at 6 Cherry Hill, Holyoke, Massachusetts 01040, and bringing such action, including eviction proceedings, as may be appropriate, pursuant to state and federal law.

So Ordered this _____.


_____
United States Bankruptcy Judge